IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CR204 |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| ERIC BAIRD, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on December 19, 2007.

**I.  FACTS**

Defendant Eric Baird was charged in a one-count information with possession of child pornography, a violation of 18 U.S.C. § 2252(a)(4). Filing No. 1, Information. By statute, the crime is punishable by imprisonment for up to ten years. 18 U.S.C. § 2252(b)(2). Pursuant to a plea agreement, Baird entered a plea of guilty to the charge. Filing Nos. 4, Plea Agreement ("Plea Agr.") at 6, Minutes of plea hearing. In his petition to enter a plea of guilty, Baird stated, "I downloaded several images of child porn and made a C.D. of them." Filing No. 3, Petition. In the plea agreement, defendant agreed that U.S.S.G. § 2G2.2 applied and that his base offense level was 18. Filing No. 4, Plea Agr. at 2. The United States (hereinafter, "the government") agreed that the defendant made a timely notification of intent to plead guilty and it agreed to recommend a sentence at the low end of the guideline range. *Id.* The government also stated that several guideline enhancements were likely to apply, but Baird reserved the right to challenge those enhancements. *Id.* at 3. At the plea hearing, the defendant acknowledged that the

government had evidence that he possessed 800 images of suspected child pornography and one video and one image of a known child pornography victim. Filing No. 26, Change of Plea Hearing Transcript ("Plea Hr'g Tr.") at 20-22, 24-25. The court accepted Baird's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office"), calculating defendant's sentence under the United States Sentencing Guidelines ("the Guidelines" or "federal guidelines").

In the PSR, the Probation Office identified U.S.S.G. § 2G2.2 as the applicable guideline provision for a violation of 18 U.S.C. § 2252(a)(4) and determined that Baird's base offense level should be 18. The Probation Office found the following adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (material containing a prepubescent minor), a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (distribution for receipt or expectation of a thing of value, but not for pecuniary gain), a two-level increase under U.S.S.G. § 2G2.2(b)(6) (use of a computer), and a two-level increase under U.S.S.G. § 2G2.2(b)(7)(A) (between 10 and 150 images). The application of these enhancements resulted in an adjusted offense level of 29. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 26. The Probation Office determined that Baird's criminal history category was I, resulting in a guideline sentencing range of 63 to 78 months.

The government adopted the findings in the PSR. Filing No. 14. Baird objected to the application of the five-level enhancement for distribution in exchange for a thing of value, and objected to the assessment of a two-level increase for use of a computer. Filing

Nos. 12, 13, and 15. Baird also moved for a downward departure. Filing No. 21. The record shows that the parties agreed that Baird should be held accountable for more than 10 but less than 150 images. Filing No. 26, Plea Hr'g Tr. at 21-22, 24-26. The parties later agreed to the application of a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution for receipt of something other than that described in subsection (A) through (E). That agreement mooted defendant's objection to the application of a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for distribution for a thing of value. At the sentencing hearing, Baird orally moved for a departure and for a sentence outside the Guidelines under 18 U.S.C. § 3553(a).

## II.  LAW

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-227. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. The range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* No. 06-7949, 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* No. 06-6330, 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §

3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a)). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (noting that "any thumb on the scales," indicating that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence but for the presence of certain additional facts found by judge rather than jury") (emphasis in original).

Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker,* 543 U.S. at 261. As the Supreme Court recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall,* 552 U.S. at —, 128 S. Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246).

Accordingly, "the Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors" to determine the appropriate sentence. *Gall,* — U.S.

at —, 128 S. Ct. at 596.  The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570.  Also, the statute "further provides that, in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.*

The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."  *Gall,* 552 U.S. at —, 128 S. Ct. at 597.  If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  *Id.*  The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  *Id.* at 595.

Congress established the Sentencing Commission "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role.

5

*Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (noting key role preserved for the Sentencing Commission); *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

In light of its "discrete institutional strength[ ], a district court's decision to vary from the advisory guidelines may attract greatest respect when the sentencing judge 'finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *Id.* (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597.

### III.   ANALYSIS

#### A.   Guideline Calculation

The court finds that Baird's base offense level under the Guidelines is 18. See U.S.S.G. § 2G2.2(a)(1). The parties agree to a two-level upward adjustment for distribution under U.S.S.G. § 2G2.2(b)(3)(F), mooting the defendant's objection to the five-level distribution enhancement. Defendant does not dispute the application of a two-level adjustment by reason of the number of images under U.S.S.G. § 2G2.2(b)(7)(A). The defendant's objection to a two-level increase for use of a computer under U.S.S.G. § 2G2.2(b)(6) is overruled. There is no dispute that Baird used a computer to obtain the images he possessed and he has not shown that application of the enhancement results in double-counting. Accordingly, Baird's adjusted offense level is 26. The court finds an adjustment for acceptance of responsibility is warranted and the government has moved for application of a three-level downward adjustment under U.S.S.G. § 3E1.1(a) & (b). Baird's total offense level is thus 23. The court further finds that Baird's criminal history

category is I, resulting in an advisory sentencing Guidelines range of imprisonment of 46 to 57 months.

### B.    Departure

Baird moves for departure under U.S.S.G. § 5K2.0. The court's authority to downwardly depart is controlled by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act"). That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the sentencing Guidelines in sexual offense and child pornography cases. 18 U.S.C. § 3553(b)(2). In cases involving child crimes and sex offenses, downward departures can only be granted for a mitigating circumstance that has been affirmatively and specifically identified as a permissible ground for departure, that has not adequately been taken into consideration by the Sentencing Commission in formulating the Guidelines, and that should result in a different sentence. U.S.S.G. § 5K2.0(b)(1). The PROTECT Act of 2003 eliminated judicial departures for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual.

Also, post-PROTECT Act, downward departures for Aberrant Behavior under U.S.S.G. § 5K2.20, and for diminished capacity under § 5K2.13 are specifically disallowed for child crimes or sexual offenses. Accordingly, in determining a Guidelines sentence, the court is not authorized to grant a downward departure and the defendant's motion for a downward departure is denied.

### C.    Section 3553

In fulfilling its duty to impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes, the court first considers the nature and circumstances

of the offense. The court finds possession of child pornography is a serious offense. It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered by part G of the Guidelines. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992). Possession of pornography is the least serious of the crimes on the continuum of conduct–from possession to distribution to production to predatory abuse–that exploits children. A possessor of child pornography is considerably less culpable that a producer or distributor of the exploitative materials and is a marginal player in the overall child exploitation scheme. The court further notes that, although he purchased or consumed illegal materials, there is scant evidence that the distributed many illegal materials to others. The seriousness of the offense is further attenuated by the fact that the conduct occurred a number of years ago and there is no evidence that the activity continued over any extended period of time.

Further, the court has considered the defendant's history and characteristics. Baird has no criminal history points. He has had no previous contacts with the criminal justice system. He is intelligent and well educated. At the time of his arrest, he was serving in the United States Air Force, having attained the rank of Captain. He was a navigator in the Air Force and served his country in Afghanistan and Iraq, receiving several commendations. He has complied with stringent conditions of pretrial release, including restrictions on travel,

contact with minors, and use of the Internet. He has also participated in counseling at his own expense.

Importantly, he has been examined by two mental health professionals, both of whom find that he is at low risk to reoffend and does not meet the diagnostic criteria for pedophilia. He is not a sexual predator. The probability of recidivism by this defendant is low. The court finds it unlikely that Baird will engage in this crime or any other criminal behavior in the future.

Further, the court notes that the defendant has already suffered serious consequences as a result of his actions. A conviction for possession of child pornography carries considerable stigma. Baird has lost his military career, has a felony conviction on his record, and will have to register as a sex offender.

In addition, the court has consulted and taken into account, <u>as advisory</u>, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto. 18 U.S.C. § 3553(a)(2); *Booker*, 125 S. Ct. at 766-67. In "consulting" and "taking into account" the Guidelines, the court considers that the Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment"). The Sentencing Commission ("Commission") was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and

rehabilitation.  *Id.* at 12-13.  Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines.  *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (regarding drug trafficking Guidelines).  Based on sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.  Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range.  However, for policy reasons and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses.  *Id.* at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 128 S. Ct. at 574.

The court notes that the Guidelines for child exploitation offenses, like the drug-trafficking Guidelines, were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives.  *See* U.S.S.G. App. C, Amends. 537 & 538 (Nov. 1, 1996), 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 651 (Oct. 27, 2003), 664 (Nov. 1, 2006).  The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."  Fifteen-Year Assessment at 73.  Because the Guidelines do not reflect the Commission's unique

institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.

The court finds that a sentence of two years will more closely approximate the sentencing range that was in effect before the Sentencing Commission, in response to a Congressional directive, collapsed the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2) in 2003.[1]  That action, together with the expansive coverage of "distribution" in U.S.S.G. § 2G2.2(b)(3)(A) through (F), and the application of significant quantity-driven enhancements for the number of images, has served to muddy the qualitative distinctions between "mere possession" and "distribution of child pornography."  It is clear that one possessing child pornography has far less culpability than one distributing pornography, who, in turn, has far less culpability than one who produces child pornography.  The greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.  In fact, the "distribution" criteria is not helpful in this case.  Notwithstanding the agreement between the parties concerning a two-point distribution enhancement, the court finds that the defendant's distribution of child pornography, if extant, was minimal. The Guidelines at issue do not adequately reflect those important distinctions in levels of culpability.

---

[1] The former section 2G2.4 provided a base offense level of 15, which would generate a sentencing range of 18 to 24 months at Criminal History Category I.  The application of enhancements for the number of images and for material involving a prepubescent minor would have increased the low end of the range to 24 months and 30 months, respectively.

The court has also considered the need for the sentence imposed: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). The court finds that a sentence of incarceration shorter than the sentence recommended under the Guidelines reflects the seriousness of the offense and provides just punishment. The mere fact of Baird's prosecution deters others from engaging in this sort of conduct, and a sentence of incarceration will act as a further deterrent to others contemplating such activity. The value of any longer sentence as a deterrent, over and above these other factors, would be marginal.

In light of his demonstrated remorse, which the court credits as sincere, there is little need to protect the public from any future crimes. Baird has a low potential for recidivism and appears to appreciate the seriousness of his offense. In this connection, the court stresses the importance of opinions of the medical professionals who have examined Baird and have determined that he is not likely to reoffend and is not a predator.

This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Given that the benefit to society of a longer sentence of imprisonment would be negligible, the benefit of a longer term of incarceration is outweighed by the harm it would do to Baird and to his prospects of returning to society as a productive citizen on completion of his term of imprisonment.

Also, the court has considered the need to avoid unwarranted sentencing disparities among defendants who have engaged in similar conduct. *See* 18 U.S.C. § 3553(a)(6) &

(7). The sentence imposed on Baird will ameliorate the disparity in the treatment of defendants like Baird and those who commit far more serious crimes of exploitation and abuse. Accordingly, the court finds a sentence of two years of incarceration adequately addresses the sentencing objectives outlined in Section 3553 and will "impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes." 18 U.S.C. § 3553(a).

A judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 11th day of January, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge