| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF NEBRASKA |
| 2 | |

```
UNITED STATES OF AMERICA, )
 3                          )        8:07CR204
              Plaintiff,   )        December 19, 2007
 4                          )        9:05 a.m.
   vs.                      )        Omaha, Nebraska
 5                          )
ERIC BAIRD,                 )
 6                          )
              Defendant.    )
 7
```

8

9

                TRANSCRIPT OF SENTENCING PROCEEDINGS
10          BEFORE THE HONORABLE JOSEPH F. BATAILLON
                  UNITED STATES DISTRICT JUDGE
11

12

                    A-P-P-E-A-R-A-N-C-E-S
13

```
FOR THE PLAINTIFF:        Michael P. Norris
14                        Assistant United States Attorney
                          1620 Dodge Street
15                        Suite 1400
                          Omaha, Nebraska 68102
16


17 FOR THE DEFENDANT:       James E. Schaefer
                          Shapiro & Schaefer
18                        1001 Farnam Street
                          Third Floor
19                        Omaha, Nebraska 68102


20
   COURT REPORTER:         Allan G. Kuhlman
21                        Suite 3122
                          111 South 18th Plaza
22                        Omaha, Nebraska 68102


23

24

   Proceedings recorded by mechanical stenography, transcript
25 produced with computer.
```

1          (At 9:05 a.m. on December 19, 2007, with counsel for

2    the parties and the defendant present, the following

3    proceedings were had:)

4          THE COURT:  This is the case of United States of

5    America versus Eric Baird, case number 8:07CR-204.

6          Would the attorneys please enter their appearance

7    for the record?

8          MR. NORRIS:  Good morning, Your Honor.  For the

9    United States, I'm Michael Norris.

10          MR. SCHAEFER:  Good morning, Judge.  Jim Schaefer

11    appearing with the defendant.

12          THE COURT:  Mr. Baird pled guilty to Count I of the

13    information on June 14th charging him with possession of

14    child pornography in violation of 18, United States Code,

15    Section 2252 subparagraphs (a)(4)(B).

16          The court accepted the defendant's guilty plea and

17    adjudges that the defendant is guilty of the offense charged

18    in Count I of the information.

19          A presentence investigation report has been

20    prepared.

21          I've also reviewed the plea agreement, and we've

22    done a number of studies on Mr. Baird in the interim.

23          The court has reviewed the presentence investigation

24    report.

25          I've also reviewed the plea agreement and the court

1    will accept the plea agreement.

2              With respect to the presentence investigation

3    report, does the government accept and adopt the presentence

4    report, Mr. Norris?

5              MR. NORRIS:  Yes, Your Honor.

6              THE COURT:  Mr. Schaefer, do you have any objections

7    to the presentence investigation report?

8              MR. SCHAEFER:  I had questions on a couple of the

9    enhancements, Judge, that I don't think we resolved at the

10   last hearing.

11             THE COURT:  I think you're correct.  So how do you

12   want you to proceed?  Do you want any additional evidence?

13             MR. SCHAEFER:  There were two things.  Paragraph 22

14   and 23.

15             Paragraph 22 had to do with the five level

16   enhancement for distribution for profit and I think the

17   government submitted U.S. versus Griffin indicating it was

18   their position this was a peer-to-peer system that was

19   utilized by Mr. Baird.

20             That is just not the case.  This wasn't a file

21   sharing program he had like Kazaa.  It was totally different.

22   I think that's the evidence in the case file.

23             His folders were not available for downloading from

24   anybody that was on the computer like a Kazaa user could do.

25             So I don't think the five level enhancement for

1    distribution is appropriate, Judge.

2            THE COURT:  But he was able to, as I understand the

3    evidence, your client was able to obtain pornography by

4    accessing someone else's file server?

5            MR. SCHAEFER:  Yes.

6            THE COURT:  And then giving something, we're not

7    sure what, in order to get something in return?

8            MR. SCHAEFER:  Right.

9            THE COURT:  But you don't think that applies under

10   the five point enhancement?

11           MR. SCHAEFER:  No.

12           THE COURT:  Because he is not the one that had the

13   peer-to-peer?

14           MR. SCHAEFER:  Correct.

15           THE COURT:  Mr. Norris?

16           MR. NORRIS:  Your Honor, I think Griffin talks about

17   peer-to-peer and Kazaa and LimeWire and BearShare and some of

18   those cases.

19           This is an internet relay chat, which really serves

20   the same purpose.

21           Basically, as it says in the search warrant, and as

22   it says in the response by the probation office to the

23   objections, according to the search warrant affidavit the

24   file share server in Rankin, Illinois, had specific

25   instructions which required the user to upload a certain

1   number of images of prepubescent children in exchange for

2   being allowed to download images of child pornography.

3         So there is an exchange or bartering system going on

4   that Griffin talked about, and that really in sum and

5   substance is no different than being able to trade images as

6   a result of Kazaa or LimeWire or some of these what are known

7   as peer-to-peer networks.

8         It's the same thing.  It's just, I won't say

9   prehistoric, but a precursor to what happens later when the

10  peer-to-peer networks become more popular.

11            THE COURT:  We're using the 2006 sentencing?

12            MR. NORRIS:  Yes.

13            THE COURT:  I know the guidelines have some specific

14  language in the notes concerning that.  Mr. Schaefer?

15            MR. SCHAEFER:  This program I think was designed for

16  messaging here, Judge, but it does have more functionality

17  built into it.  It does allow what took place in this

18  particular case.

19            With the instance messaging situation that we have

20  here, it does come with the ability to share files, but it's

21  different.

22            It's different in construction than I think what the

23  government is trying to allege here for the five level

24  increase.

25            It's widely used for instant communication, but the

1    ability to share files, as done here, is not the ability, or

2    maybe the target I should say of what is indicated under 2G2.

3            I guess that's my position.  There was certainly no

4    intent by Mr. Baird to distribute anything in return for

5    anything else.

6            THE COURT:  But the government's affidavit says that

7    he had to exchange, correct?

8            MR. SCHAEFER:  Yes, and I know that's in the

9    affidavit.

10           THE COURT:  You disagree with the affidavit?

11           MR. SCHAEFER:  Well, I guess I disagree with the

12   fact that Eric had a file-sharing program in his computer.

13           THE COURT:  And I don't know that anybody says that

14   he does.

15           The question, though, is, did he have to exchange or

16   barter one set of pornography for another in order to get the

17   pornography that he has?

18           And the government's evidence is that he did.  Do

19   you have any evidence to the contrary?

20           MR. SCHAEFER:  No, I don't.

21           THE COURT:  But you believe that the enhancement

22   applies only if your client has the peer-to-peer program, as

23   opposed to going to another program that has the capability

24   to barter?

25           MR. SCHAEFER:  Yes.

1          THE COURT:  And the government's position is it

2    doesn't make any difference?

3          MR. NORRIS:  The government's position is it's the

4    exchange and a barter and I don't think the guideline is

5    written in the context of a peer-to-peer program.

6          It's written in the context of an exchange or barter

7    and Griffin expands it to include peer-to-peer programs.

8          Well, it doesn't expand it, but states that's what

9    it's meant to address.

10         MR. SCHAEFER:  Under the Griffin case the

11   enhancement was applied because Griffin had that capability.

12         THE COURT:  That would be the next step.

13         MR. SCHAEFER:  Right.

14         THE COURT:  But Mr. Norris' position is that the

15   substance of the Griffin case is that someone had to exchange

16   or barter, one way or another, whether it was on your

17   computer program or not, that Griffin transcends that

18   distinction, and your position is that it doesn't?

19         MR. SCHAEFER:  Right.  That's the issue there.

20         THE COURT:  Mr. Schaefer, do you agree or disagree

21   that in order to obtain the images that your client received

22   -- well, do you agree or disagree with the government's

23   affidavit that your client had to exchange prepubescent

24   material in order to get prepubescent material?

25         MR. SCHAEFER:  No, I don't agree with that.

1          THE COURT:  Why not?  What evidence do you have to

2     that effect?

3          MR. SCHAEFER:  Well --

4          THE COURT:  Their affidavit says that that's what

5     your client had to do.

6          MR. SCHAEFER:  The peer-to-peer -- the software that

7     is available, there is a difference being actively engaged or

8     whether or not it's passing.  In other words --

9          THE COURT:  I understand that, but the government's

10    affidavit says that your client had to exchange prepubescent

11    pornography in order to get the prepubescent pornography that

12    was provided on this server, correct?

13         MR. SCHAEFER:  That's correct, and the reason I

14    disagree with that is because that's never been produced.

15         THE COURT:  What has never been produced?

16         MR. SCHAEFER:  Whatever he exchanged.

17         THE COURT:  But the government's affidavit says that

18    that's what occurred, correct?

19         MR. SCHAEFER:  I understand that.

20         THE COURT:  Your position is until they produce it

21    you don't believe it?

22         MR. SCHAEFER:  Well, that's my position, yes.

23         THE COURT:  And why is that?

24         MR. SCHAEFER:  Well, I don't know.  I've seen some

25    of this material that the government alleged is kiddy porn.

1          THE COURT:  I see, and you don't think it is?

2          MR. SCHAEFER:  Some of is and some of it doesn't fit

3     the definition.

4          MR. NORRIS:  Your Honor, I would submit that -- I

5     don't know that you have to exchange kiddy porn for kiddy

6     porn.

7          I think you can exchange four images of adult

8     pornography and receive forty-five image of child pornography

9     and it still fits under this because it's a barter or trade

10    situation with the child pornography going one way and the

11    other the other way.

12         MR. SCHAEFER:  I think Mr. Norris will agree with me

13    that there was what we call regular porn or adult porn --

14         THE COURT:  That was exchanged.

15         MR. SCHAEFER:  Right.

16         THE COURT:  And what the government wants me to

17    do -- do you have the guidelines there in front of you

18    Mr. Norris?

19         I think it's 2G2.2, subparagraph (b) subparagraph 3,

20    subparagraph capital (B), distribution for the receipt or

21    expectation of receipt of a thing of value, but not for

22    pecuniary gain, increase by five levels.

23         MR. NORRIS:  Right.

24         THE COURT:  Anything further, Mr. Schaefer?

25         MR. SCHAEFER:  One other on paragraph 23, Judge, the

1   two level enhancement that has been --

2           THE COURT:  Oh, no, I just want to talk about this.

3           MR. SCHAEFER:  No, nothing else on that, Judge.

4           THE COURT:  I don't think I'm going to go further

5   than the Griffin case.

6           Distribution for the receipt or expectation of

7   receipt of a thing of value, but not for pecuniary gain,

8   increase by five levels.

9           It seems to me that if Mr. Baird had a peer-to-peer

10  program in his program, then this probably applies.

11          If he distributes images that are not unlawful, to

12  obtain unlawful images, I'm not sure that you can call it a

13  thing of value.

14          And so I think we are pushing the envelope on

15  distribution under that circumstance, because he's not

16  distributing anything illegal, and I don't know that you can

17  say he's distributing anything that has value.

18          So I'm going to sustain the defendant's objection to

19  paragraph 22.

20          MR. NORRIS:  If you are sustaining the objection to

21  paragraph 22, then there is still a two level enhancement

22  under (b)(3)(B) as well or maybe (b)(3)(F).

23          THE COURT:  It's (F), distribution other than

24  distribution in provisions (A) though (E).

25          MR. NORRIS:  I would submit that it's a two level

1    enhancement at least, as opposed to a five under your theory

2    then.

3            THE COURT:  Mr. Schaefer, your position on that?

4            MR. SCHAEFER:  Doesn't distribution still have to be

5    for some illegal purpose?

6            If I send out Martha Stewart recipes and get back

7    something that is not legit, is that distribution described

8    in (A)?

9            THE COURT:  Mr. Norris, what are we distributing?

10   Doesn't he have to distribute something illegal?

11           MR. NORRIS:  No, of course not.  All he has to do is

12   exchange.

13           What he's doing is he's sending four images to get

14   forty-five, but that's what he's exchanging, and that's the

15   barter.

16           THE COURT:  So he's distributing something, and as

17   long as he's distributing something to get something, then

18   you believe this guideline applies?

19           MR. NORRIS:  And that's the value that I think

20   applies the five level enhancement, but I'm not arguing that

21   point any further, because you've decided.

22           But we are still to the point where you've got an

23   exchange, and the exchange is I give you four images and --

24   you give me four images and in return I will send you

25   forty-five, some of which is going to be child pornography.

1           THE COURT:  Mr. Schaefer?

2           MR. SCHAEFER:  I think you've heard the argument,

3       Judge.  I just don't agree with the enhancement at all in

4       this paragraph, paragraph 22.

5           THE COURT:  This is clearly distribution.

6       Distribution under the definition is, distribution means any

7       act, including possession with intent to distribute,

8       production, advertisement and transportation related to the

9       transfer of material involving the sexual exploitation of a

10      minor.

11          Distribution includes posting materials involving

12      the sexual exploitation on a web site, but does not include

13      the mere solicitation of such material by the defendant.

14          Maybe I'm wrong.  If it doesn't include solicitation

15      of such material by a defendant, then how is this

16      distribution, Mr. Norris?

17          MR. NORRIS:  He's trading and he's receiving in

18      return and actually under the statute, if I had charged him

19      with receipt, it would have been a prototypical receipt.

20          He's receiving something in return or he's just

21      receiving something.

22          THE COURT:  But if he solicits, how is that any

23      different than asking for it with legal material?

24          MR. NORRIS:  He is not asking for it with legal

25      material.

1          THE COURT:  He is asking for it with pornography,

2    but there is nothing illegal about pornography unless it's

3    prepubescent minors.

4          MR. NORRIS:  Correct.

5          THE COURT:  And you can't show that he used

6    prepubescent minor material.

7          MR. NORRIS:  Actually I think I can.  May I have a

8    minute to talk to my witnesses?

9          THE COURT:  Yes, you may.  Mr. Norris, I have to

10   tell you, I thought this might run a little long.

11          I'm wondering if I can take a guilty plea and then

12   we can come back and it will give you a chance to visit with

13   your witness.

14                    (9:25 a.m. - Recess Taken)

15          (At 9:50 a.m. on December 19, 2007, with counsel for

16   the parties and the defendant present, the following

17   proceedings were had:)

18          THE COURT:  We're back on the record and,

19   Mr. Norris, I asked you to further elaborate why the two

20   point enhancement applies and not the five point enhancement

21   and you may proceed.

22          MR. NORRIS:  Your Honor, I would state the

23   following:

24          As far as the two points, you've indicated that the

25   problem that you have with the language on distribution is

1    that if you solicit, and merely solicit, then it may not

2    apply.

3          And I don't take any umbrage with that, but what he

4    did here was not merely solicit.

5          To me soliciting means asking for and then receiving

6    and what he did here was he had to give four items of value

7    in order to receive forty-six items of value.

8          So that takes it beyond the soliciting and it takes

9    it into the bartering/exchanging for something other.

10         Now, if you go back into that commentary --

11         THE COURT:  How is it distribution?  That is the

12    question.  How is it distribution?

13         I'm trying to relate this in my mind with reality

14    besides the computer reality.

15         If he distributes, that means he has to give

16    something -- distribute something illegal to get something

17    illegal, and then that makes him a distributor, as opposed to

18    someone that merely possesses or purchases or receives.

19         So how is he a distributor if you can't show that he

20    gave something illegal to get something illegal?

21         MR. NORRIS:  Well, if I show that he gave something

22    illegal to get something illegal, we are back at the five

23    level, because that's what commentary says irregardless of

24    peer-to-peer.  It says you trade child porn for child porn,

25    you're looking at five levels.

1          THE COURT:  How do you have anything other than

2     that?  I know the guidelines say two point is for other

3     distribution.  How do we have distribution here?

4          MR. NORRIS:  This is why we are agreeing to the two

5     levels, and we are agreeing to the two levels because there

6     are four items that are exchanged.

7          The agent has talked to the agent who was involved

8     in this that took the server down.

9          Three of those items are clearly not going to be

10    child pornography.  We will tell you that right now.

11         They are photographs of either adult women, or they

12    are photographs of undetectable age, and one is fully

13    clothed, so we don't worry about that.

14         But there's a movie out there and the movie has the

15    name of -- if I may have a second I'll put the name on the

16    record -- but if that movie comes back as a child pornography

17    movie, and the title is very suggestive of the fact it may

18    have child pornography in it, then we go right to the five

19    level.

20         I think the parties are willing to agree that it's a

21    two level.

22         So it's a compromise and I'm willing to not appeal

23    the determination on the five level and go with the two

24    level, if that's what they are willing to do.

25         MR. SCHAEFER:  We are willing to do that, Judge.  We

1  don't recollect -- my initial comment to you was that we

2  didn't think some of that material was illegal, and it turns

3  out that three of the four weren't, but I don't know if and

4  my client doesn't remember what the remainder is, and it

5  could or couldn't be, so we're compromising this morning.

6       THE COURT:  I always tell the parties to settle

7  things.  Apparently you've settled it, so I'll apply the two

8  point enhancement.

9       And now you have another objection to one of the

10 other paragraphs, is that correct, Mr. Schaefer?

11      MR. SCHAEFER:  I do, Judge.  Paragraph 23 assesses a

12 two point enhancement for use of a computer to utilize these

13 images for viewing.

14      And my contention is that the information recites

15 that under 2256 that the images are transported in interstate

16 commerce by means of using a computer.

17      So I think that two levels is included as the base

18 offense level.

19      THE COURT:  I wish you were right, Mr. Schaefer, but

20 this enhancement has been in the guidelines since as far back

21 as I can remember, and it seems as though it is double

22 counting, but the scheme of the guidelines with respect to

23 the base offense level and then any enhancement for the

24 computer is the scheme and I think a correct read of the

25 guidelines gets you to the two points for use of a computer.

1    So I am going to overrule your objection to that.

2         MR. SCHAEFER:  Then we are ready to proceed to

3    sentencing.

4         THE COURT:  Mr. Baird, did you have an opportunity

5    to review the presentence report yourself?

6         THE DEFENDANT:  Yes, Your Honor, I did.

7         THE COURT:  The base offense level is 18.  Plus two

8    for a minor under twelve.

9         Plus two for other distribution.  Plus two for a

10   computer being used and plus two for roughly 150 images, for

11   a gross offense level of 26.

12        Minus three for acceptance of responsibility gives

13   us a total offense level of 23.

14        Criminal History Category I.  Sentencing ranges of

15   imprisonment, 46 to 57 months.  The supervised release range

16   is five years.

17        The fine range, I believe, is ten thousand to one

18   hundred thousand dollars, and a one hundred dollar special

19   assessment.

20        All right.  Mr. Schaefer, do you have a motion for

21   downward departure?

22        MR. SCHAEFER:  Yes.

23        THE COURT:  You may proceed with respect to that.

24         MR. SCHAEFER:  Yes.  Before I get to that, did you

25   receive the evaluation?

1          THE COURT:  Yes.

2          MR. SCHAEFER:  Will that be made part of the

3     presentence?

4          THE COURT:  We can if you want to.

5          MR. SCHAEFER:  There is one correction.

6          THE COURT:  You can make it an exhibit or you can

7     just ask me to take notice of it.  I would prefer we make it

8     an exhibit and then I will seal the exhibit.

9          MR. SCHAEFER:  Let's do that.

10         THE COURT:  Do we have any other exhibits,

11    Ms. Slagle, in this matter?  Let's be safe and mark it as

12    Exhibit 101.

13         MR. SCHAEFER:  There's only one inaccuracy in that,

14    Judge.

15         THE COURT:  Does the government have any objection

16    to Exhibit 101?

17         MR. NORRIS:  No, Your Honor.

18         THE COURT:  It's received and sealed.  The

19    inaccuracy is what?

20         MR. SCHAEFER:  Under sexual assessment on the fourth

21    page, very last sentence on that page, under sexual

22    assessment, the very last sentence where it says he reports,

23    the word, if we could strike out the word male, that is not

24    correct.  That has to be a typo.

25         THE COURT:  I assume you have no idea one way or the

1    other on this, is that correct, Mr. Norris?

2          MR. NORRIS:  I don't know, but I don't think it

3    matters in the overall scheme of things, so I don't object if

4    you strike it.

5          THE COURT:  I would rather not strike it, but I

6    would rather take your statement that it is inaccurate,

7    unless you have the author here to tell me otherwise.

8          I'm willing to take into consideration your

9    assertion that it is a typographical error or that it is in

10   error.

11         I will agree with Mr. Norris that I don't know that

12   it is of any moment as long as it doesn't have to do with

13   minors.

14         Anything further?  Any further evidence,

15   Mr. Schaefer?

16         MR. SCHAEFER:  No other evidence, Judge.

17         THE COURT:  Any other evidence from the government?

18         MR. NORRIS:  No, Your Honor.

19         THE COURT:  You may argue your motion,

20   Mr. Schaefer.

21         MR. SCHAEFER:  I would like you to depart downward,

22   Judge, from the level 23.

23         Mr. Baird has always been a law-abiding citizen.  He

24   was in the service of his country when this criminal activity

25   was discovered.

1          He's a captain in the United States Air Force with

2   no prior record.

3          I don't believe that this criminal activity really

4   shows much evidence of any significant planning of any

5   nature.

6          I hope the court is convinced that Eric is not

7   dangerous at all to the community.

8          The information that has been developed should lead

9   us to conclude that he's certainly not a pedophile.

10         He has been examined by a couple different agencies

11  now and I hope that the court is comfortable with the fact

12  that he does not suffer from any mental illness with regard

13  to that.

14         Captain Baird, when he was discovered, when

15  initially talked to by the agents of the United States Air

16  Force, thought that the material that was contained on that

17  CD had been destroyed.

18         He had cleaned out his computer before he went on

19  active duty overseas and the criminal activity that was

20  focused on here took place over a very short period of time

21  some time ago.

22         THE COURT:  What evidence is there of that?

23         MR. SCHAEFER:  The computer was looked at and the

24  hard drive was cleaned and what we had left was a CD that was

25  burned and was discovered when the search warrant was served

1   on Mr. Baird's home.

2           But he has led a law-abiding life, Judge, a decent

3   life.  He has tremendous support in the community here.

4           He has good character references.  His parents are

5   here in the courtroom traveling from California I think for a

6   second time here to show support.

7           Part of my motion for downward departure, I entitled

8   it as a Scooter Libby motion.

9           The president of the United States pardoned Scooter

10  Libby under similar circumstances, I think, because he had

11  given and dedicated his adult life to the service of his

12  country, just as Captain Baird did.

13          My client is now going to be a saddled with a felony

14  conviction.  His military career is over with.

15          He's going to be registered as a sex offender for

16  the next ten years, I think that's enough punishment.

17          In my opinion, Judge, he doesn't need to be

18  incarcerated for 46 to 57 months.

19          I was going to suggest this morning that you reduce

20  this to an offense level 10, give him a split sentence, and

21  even an opportunity for probation.

22          I don't think that would be out of line with what he

23  could have received or what he would have received here in

24  the State of Nebraska had he been prosecuted a few blocks

25  south of where we're at this morning.

1       There is no actual victim here.  I understand that

2   the government's position that there is always a victim when

3   this type of activity is discovered, but even the presentence

4   report indicates there is not really identifiable victims

5   here currently.

6       So for all of those reasons, Judge, I would ask that

7   you depart downward.

8       THE COURT:  Mr. Norris?

9       MR. NORRIS:  I can wrap it all up into allocution if

10   you wish, if that was allocution, or I can just go on the

11   downward departure, however you wish to proceed.

12       THE COURT:  I think that Mr. Schaefer's motion for

13   downward departure is in the nature of the heartland motion

14   for downward departure, and it's not hard for the court to

15   conflate the heartland departure with a statutory deviation

16   as well, and I have to say that I'm inclined to do that, but

17   not nearly as much as Mr. Schaefer wants me to.

18       But I think what we'll do is just move to allocution

19   and the court's consideration with respect to the statutory

20   sentencing as well as the guideline sentencing, and you've

21   talked about the guidelines, Mr. Schaefer.  Is there anything

22   you wanted to add?

23       MR. SCHAEFER:  No.  My client did want to address

24   you in allocution briefly.

25       THE COURT:  Mr. Baird?

1          MR. SCHAEFER:  Thank you, Your Honor for allowing me

2    to speak.  I wanted to take this moment to apologize to

3    everybody in this room right now for the fact that we're

4    here.  It's my fault that we're here and nobody else's.

5          I wrestled with this for a long time about a victim

6    and, you know, why everything was going the way it was going,

7    I couldn't see a victim in the case, and the people that

8    really suffered for this are the people sitting behind me,

9    people who have traveled from California twice now and they

10   shouldn't have to be going through that.  I apologize to

11   everybody here involved even at all.

12         I loved my life that I had before in the military,

13   serving.  I spent a long time wishing I could have it back

14   and I know that's different now.

15         I know that I'm going to be paying for this for a

16   long time.

17         I've lost my career.  I've lost most of my military

18   friends.

19         I'm losing my house because I can't pay for it, and

20   I'm losing my freedom for a while.

21         I have been on ankle bracelet for six months now and

22   I walked into Jim's office to start this over a year ago.

23         I am ready for this to be over.  I'm ready to go on

24   with my life however you see that fit, sir.

25         I would like to make you two promises.  One is that

1    I will, regardless of what happens today, I will do

2    everything in my power to lead a successful and normal life

3    away from any of the stigma that go with being a registered

4    sex offender or a felon.

5            The other one is from the therapist that you had me

6    go to for the second evaluation and the promise is that you

7    will never see me again.

8            I want to make that very clear.  She gave me a low

9    risk for re-offense and I promise you there will be no risk

10   for re-offense.

11           I do not presume to know how to do your job or tell

12   you how to do your job.

13           I will accept whatever sentence you give me and I

14   will accept it graciously.

15           I'm thankful that we've even got enhancements taken

16   off.  Three points is three points and I'm thankful for that.

17           But regardless of what happens today, my life will

18   go on and it will be okay and I accept whatever you have to

19   say today.

20           If you have any questions you have of me, I'll

21   answer them now.  If not, thank you very much.

22           THE COURT:  Thank you, sir.  Mr. Norris?

23           MR. NORRIS:  First of all, Mr. Baird was very

24   cooperative right from the outset from the point in which the

25   disks were taken.

1          I heard from Mr. Schaefer.  There was really no

2     arguing about what was done or anything other than the effect

3     and the impact that this would have on his military career,

4     and obviously there's not much we can do about that.

5          We could have charged this as a receipt, because

6     even based on the search warrant it talked about how it came

7     to him, in which case he would have been dealing with a five

8     year mandatory minimum.

9          We opted not to do because of the cooperation he

10    gave us and --

11         THE COURT:  How would you have charged -- oh, under

12    the new statute for receipt?

13         MR. NORRIS:  Yes.  If I had charged it with receipt

14    because of what was sent to him from the server in Rankin,

15    Illinois, he received it as soon as it comes to there.

16         Now, if we could have proved he received it in

17    Nebraska and it was in a .com.cox.net, probably could have,

18    if we had gone through that.

19         But the point is, we could have charged him with a

20    fire year mandatory minimum.

21         We didn't do that based upon his service to his

22    country, based upon his cooperation, and based upon the fact

23    that he would be coming before you and asking for a downward

24    departure.

25         I don't think a downward departure -- we are

1    recommending the low end of the guideline range.

2              I don't know that a downward departure is

3    inappropriate.  I'll say that much.

4              But I will say that on the reasons that are

5    proffered, they are not strong reasons in and of themselves.

6              His military service is something that can be

7    considered, but again is it that much greater than anything

8    else?

9              The fact he is going to get a higher sentence here

10   than he would up the street cannot and should not be

11   considered.

12             The fact of the report that is before you, that

13   report is done to make sure that he's not a pedophile.

14             It's not like he gets bonus points for not being a

15   pedophile; it's to make sure he doesn't injure, harm, or that

16   we are not releasing somebody earlier or not putting the

17   right restrictions on them.

18             So for those reasons, I anticipate that there will

19   be a downward departure in this case, I'm asking that it be a

20   reasonable downward departure, and by reasonable I'm

21   suggesting that it be closer to the lower end of the

22   guideline range than to probation.  Thank you.

23             THE COURT:  Is there any legal reason why the court

24   should not proceed to sentencing at this time, Mr. Norris?

25             MR. NORRIS:  No, sir.

1              THE COURT:  Mr. Schaefer?

2              MR. SCHAEFER:  No, Your Honor.

3              THE COURT:  The first thing we have to say is who

4    the victim is and the victims are the minors that are

5    exploited in order to get these picture to begin with and

6    those folks are the real victims in this case.

7              And I think that's why Congress enacted the laws

8    that they've enacted and it's this court's responsibility to

9    make sure that this kind of criminal conduct ends.

10             That being said, it's interesting how the Congress

11   and the sentencing guidelines have conflated trafficking from

12   receipt.

13             In other words, it seems to me that there should be

14   more of a penalty for someone that is purveying pornography

15   than there is for someone that simply receives it or someone

16   that possesses it.

17             This law allows the court, I believe, the

18   opportunity to examine individuals to find out whether they

19   are simply possessing child pornography and whether those

20   individuals are sexual predators or not.

21             If they are sexual predators, then the court I think

22   has an obligation to sentence them at the higher end of the

23   guidelines.

24             The question is, what guidelines are supposed to be

25   applied?

1          And Congress mandated the sentencing commission to

2   change the way courts reviewed these cases and basically in

3   my opinion conflated those individuals that are simply

4   possessing child pornography with those individuals who are

5   distributing it or are in the business of distributing it.

6          Because of the way the guidelines change, if I took

7   the old guidelines for simple possession for Mr. Baird and

8   did a guidelines calculation, that calculation would put him

9   in about two years in prison as opposed to the four years

10  that he has under the current calculation.

11         I had him evaluated to be sure that he was not a

12  sexual predator and that he was a person that was simply

13  possessing fundamentally as opposed to someone who was

14  fundamentally in the distribution business.

15         So it seems to me that for that reason the

16  guidelines are somewhat inapplicable, much the way the

17  court's analysis recently in Kimbrough, and to a certain

18  extent Gall, and I'll elaborate in a written opinion.

19         As far as the departure is concerned, it seems to me

20  that Mr. Baird is somewhat outside the heartland in this case

21  because he did attempt to extricate himself from this conduct

22  by no longer using a computer to either receive or distribute

23  and that it did happen a number of years before he was

24  charged, and there didn't appear to be any continuing

25  activity after he had ended his conduct.

1          I think I have to take into account the fact that he

2   has had an exemplary life otherwise.

3          But I don't think that the motion for downward

4   departure is as substantial an issue as the sentencing

5   guidelines.

6          It doesn't appear that Mr. Baird has any likelihood

7   of offending that is substantial.

8          Given the conduct here, which is basically

9   possession as opposed to distribution, it seems to me that a

10  sentence closer to two years is appropriate and not the four

11  years that is suggested by the guidelines.

12         So for that reason the defendant is committed to the

13  custody of the United States Bureau of Prisons for 24 months.

14         I'll recommend that he be incarcerated in a federal

15  facility as close to Omaha, Nebraska, as possible, and I'll

16  suggest FPC Yankton.

17         MR. SCHAEFER:  Judge, can I interrupt?  His family

18  all lives in California.  He was planning on probably living

19  there after this is over and there is a federal institution

20  called Atwater in California.

21         THE COURT:  Where is his family living?

22         MR. SCHAEFER:  Right outside of Fresno.

23         THE COURT:  I will recommend as close to his family

24  in Fresno, California, and I'll suggest the institution at

25  Atwater, and he's to be given credit for time served.

1          I'll allow him to self-surrender and the marshals

2     and probation officer will be in touch.

3          I will put him on a period of supervised release of

4     five years, subject to the mandatory conditions.

5          The standard conditions are also imposed, and then

6     the following special conditions.

7          Mr. Baird is to cooperate in the collection of a DNA

8     sample as required by law.

9          He's to submit his person, residence, office or

10    vehicle to search conducted by the probation officer at any

11    time.

12         Failure to submit to the search may be grounds for

13    revocation.

14         The defendant will warn any other residents that his

15    premises are subject to search.

16         He is to have no contact or reside with children

17    under the ages of 18, including his own children, unless

18    approved in advance in writing by the probation officer in

19    consultation with treatment providers.

20         He shall report all incidental contact with children

21    to the probation officer and the treatment provider.

22         He's not to be employed or participate in any

23    volunteer activities that involves contact with children

24    under the age of 18, except under circumstances approved in

25    advance in writing by the probation office.

1          He shall not access, view or possess any

2     pornographic, sexually oriented or sexually stimulating

3     materials.

4          And he shall not patronize places where such

5     material or entertainment is available, and that would

6     include auditory, telephonic, electronic media, or computer

7     programs or services.

8          He's to have his residence and living situation

9     approved in advance by the probation officer.

10          He shall sign releases of information as to allow

11    all involved in his assessment, treatment and behavioral

12    monitoring to communicate in order to share documentation

13    with each other concerning his treatment.

14          He is to register as a sex offender in accordance

15    with state and federal law and not move to a different

16    address without the prior approval of the probation office.

17          He's to successfully complete any sex offender

18    diagnostic evaluation, treatment or counseling program as

19    directed by the probation office.

20          Reports pertaining to such assessments, treatments,

21    shall be provided to the probation officer and he shall pay

22    for them based on his ability to pay.

23          He's to participate in the victim awareness program

24    as directed by the probation officer and pay for that based

25    on his ability to pay.

1           He shall submit to quarterly monitoring of all

2     electronic medias as directed by the probation officer with

3     or without the cooperation of law enforcement.

4           He's to provide the probation office with requested

5     financial information.

6           The drug testing requirement of 18, United States

7     Code, Section 3583(d) is suspended until further order of the

8     court because it appears that Mr. Baird is a low substance

9     abuse risk.

10           He's to report to the supervision unit of the United

11     States probation office here in Omaha within seventy-two

12     hours of his release from confinement.

13           That designation can change, but you need to make

14     arrangements through the court or the Bureau of Prisons to

15     get your place of reporting changed if you intend to live in

16     California.

17           A special assessment of one hundred dollars is

18     imposed.  No fine or court costs are imposed and the interest

19     requirement is waived.

20           Is there any legal reason why the court should not

21     impose the sentence previously stated?  Mr. Norris?

22           MR. NORRIS:  No, Your Honor.

23           THE COURT:  Mr. Schaefer?

24           MR. SCHAEFER:  No, Judge.

25           THE COURT:  The sentence previously stated shall be

1    and hereby is imposed on the defendant, Eric Baird.

2           Mr. Baird, you have the right to appeal your

3    sentence and your conviction but you must file it within ten

4    days of when I sign the order.

5           If you want to appeal the case, I would suggest you

6    talk to Mr. Schaefer.

7           If you cannot afford the cost of a lawyer or the

8    cost appeal, he'll put together the necessary paperwork and

9    if you qualify you don't have to pay for your lawyer or the

10   cost of the appeal.

11          Mr. Norris, is there anything further?

12          MR. NORRIS:  Just his release, Your Honor, and I

13   have no objection to his self-reporting.

14          THE COURT:  Mr. Schaefer?

15          MR. SCHAEFER:  No.

16          THE COURT:  Mr. Baird, the probation office and the

17   marshal's office will be in touch with you as to where to

18   report.  We are adjourned.

19                 (10:30 a.m. - End of Proceedings)

20

21

22

23

24

25

1

2                              C-E-R-T-I-F-I-C-A-T-E

3              I, Allan G. Kuhlman, do hereby certify that the

4      foregoing is a correct transcript from the record of

5      proceedings in the above-entitled matter.

6              Dated this 14th day of December, 2010.

7

8                                        s/Allan G. Kuhlman
                                         Allan G. Kuhlman
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25