IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:07CR204 |
| Plaintiff, | ) | |
| | ) | **UNITED STATES RESPONSE** |
| vs. | ) | **TO DEFENDANT'S THIRD** |
| | ) | **MOTION TO TERMINATE** |
| ERIC M. BAIRD, | ) | **SUPERVISED RELEASE** |
| Defendant. | ) | |

The United States responds to Baird's Third Motion for Termination of Supervised Release by respectfully requesting that this Court deny the motion. The United States would further respond that the United States Probation Office, and more specifically, the probation officers actively supervising Baird request that the Court deny the motion. This Court is well aware that the defendant is a sex offender who received a significant break on his initial sentence and now seeks discharge from his supervised release. Baird makes this request with over two years remaining on his term of supervised release despite the nature of his conviction, the strict scrutiny that Congress has placed upon sex offenders (as exhibited by a five year mandatory minimum term of supervised release with a maximum of life), and Baird's frequent failure to cooperate with his supervising probation officers.

**BACKGROUND**

This is Baird's third request for termination from the five year term of supervised release imposed as a result of his conviction for possessing child pornography. Baird files these motions at six month intervals. The first motion was filed on June 3, 2011, (Filing No. 50) and denied on June 9, 2011. (Filing No. 52). The second motion for early termination was filed on December 9, 2011, (Filing No. 59), and subsequently denied on December 21, 2011. (Filing No. 62). His latest

motion was filed on July 16, 2012. (Filing No. 65).

Baird's history while on supervised release has been turbulent. Within a month of beginning his supervised release, Baird requested counsel and moved to modify the conditions of his supervised release. (Filing Nos. 36 & 37). After a hearing, his motion to modify was denied. (Filing No. 39). A year later Baird was the subject of a show cause hearing. (Filing No. 45). The result of the show cause hearing was a consent order modifying the conditions of his release. (Filing No. 47).

On June 14, 2007, Baird waived indictment and entered a plea of guilty to possessing child pornography. (Filing Nos. 1 & 6). His guidelines (based on possession rather than receipt), suggested a guideline imprisonment range of 63-78 months. At sentencing, the Court departed from the guidelines and imposed a sentence of 24 months to be followed by the mandatory five year term of supervised release.

The United States Probation Office remains opposed to any early release for the defendant. The resistance of the probation office is two pronged. Initially, as a matter of office policy, the United States Probation Office does not seek nor recommend early discharge for sex offenders. Second, and specific to Baird, the probation officers assigned to the defendant do not believe he is a candidate for early release.

Baird is on intensive supervision because of his status as a sex offender. As a sex offender he is not eligible for a lower level of supervision. Neither of the probation officers who closely supervise Baird believes that his supervision should be terminated. While on supervised release, the defendant has made two separate statements suggesting to probation officers that he remains a risk to the public. He has indicated to probation officers that he does not understand why viewing child pornography is a crime. To provide further context to this statement, Baird explained by suggesting

that murder is a crime but watching depictions of murder is not criminal. Baird has previously made a comment to probation suggesting that child pornography is a victimless crime. Thus, even after treatment, Baird's comment fail to appreciate what drives the supply and demand of child pornography or, more importantly, that child pornography depicts the rape of children.

The probation office is further troubled by Baird's lack of a stable employment history since his release from prison. While under supervision, he has quit a sales job in order to work as a "lobbyist." He has been on unemployment and started a business venture assisting federal probationers and individuals under terms of supervised release in obtaining early release and modifying conditions of their supervised release. Recently, he has started yet another business venture, Metro Properties Preservation, which he indicates is a business that refurbishes foreclosed homes. The business began in July and there is little financial information available at this time. This is the first venture since the commencement of supervised release that the probation office classifies as stable employment.

Baird continues to argue with probation over the electronic monitoring of his computer. He complains that the monitoring causes his computer, which is necessary for his business, to run slow. He acknowledges that he is subject to electronic monitoring of his computer in the household. He now argues that he is "leasing" space in the home in which he resides with his girlfriend, and thus the computer is in "leased" space and therefore a remote business address as opposed to a computer within the residence. Such arguments are consistent with avoidance and not compliance.

Baird's term of supervised release is not particularly long. Congress has currently fixed the term of supervised release for individuals who violate the child pornography laws at a mandatory minimum term of five years with a maximum term of life. The United States Probation Office has

a policy against the early termination of supervised release for sex offenders. In fact, a sex offender has yet to be released early from supervised release. Baird himself, is not a poster boy for good behavior while on supervised release. He is simply undeserving. Moreover, the early termination of a sex offender from supervised release sets a dangerous precedent and a precedent that flies in the face of Congress's when requiring mandatory minimum five year terms and maximums of life for child exploitation crimes.

**ARGUMENT**

Supervised release serves important purposes. It "is a unique method of post-confinement supervision," Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000). "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes . . ." United States v. Bowe, 309 F.3d 234, 240 (4th Cir. 2002). See, United States v. Buchanan, 638 F.3d 448 (4th Cir. 2011).

Supervised release may be terminated early if a Court, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7) . . .is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "Mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination." United States v. Caruso, 241 F. Supp. 2d 466, 469 (D.N.J. 2003). "Full compliance, after all, is merely what is expected of all people serving terms of supervised release." United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997).

Baird, at best, has merely done what he was supposed to do. At times, as evidenced by

4

earlier hearings, he has not even done that. He has over two years remaining on his term of supervised release. Mere compliance is insufficient to justify early termination, especially in light of the nature of his conduct, the possession of child pornography, underlines his conviction. He has again failed to carry his burden to show his release should be terminated early.

Baird suggests that his likelihood of recidivism is low. The five year mandatory minimum term of supervised release for child pornography crimes was instituted under the PROTECT Act. In promulgating the PROTECT Act, Congress considered evidence that indicates recidivism rates for sex offenders do not appreciably decline as offenders age, and the recidivism rates climb over time. See, H.R. Rep. 107-527, 2003 WL 131168 (Discussing lifetime supervised release for sexual offenders). The evidence reflects that sex offenders re-offend as late as 24 years after release, and the number of individuals who re-offend increases as time passes. Joan Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator, 37 San Diego L. Rev. 1057, 1072 (2000). Recidivism rates reported in that study were as high as 72%. Id. at 1071. In United States v. Cunningham, 680 F. Supp. 2d 844, 855-56 (N.D. Ohio 2010), the District Court cited a recidivism rate of over 30% for sex offenders: "the predicted odds of recidivism increased by 177% among the offenders that viewed deviant pornography, such as child pornography. Moreover, the predicted odds of violent recidivism, including sexually violent recidivism, increased by 185% for this group. The predicted odds of any type of sexual recidivism increased by 233% for the group that admitted to viewing deviant pornography. This increased risk of recidivism among sexually deviant offenders has also been found in earlier studies, including a meta-study from 1996." See Hanson, R. Karl, and Monique Bussiere, Predictors of Sexual Recidivism: A Meta - Analysis.

Simply put, nobody knows whether Baird will recidivate. Nobody can predict whether, if

5

he does recidivate, his recidivism will take the form of again trading images of child pornography or that of a hands-on offender. "There is an intuitive and empirical association between sexual interest and behavior, but the two are not synonymous. Some pedophiles have not engaged in sexual behavior with children (Federoff et al, 2001). Some sex offenders with child victims are not pedophiles (e.g. Freud, Watson, & Dickey, 1991), and many pedophilic sex offenders with child victims have had adult sexual partners . . . admission of child pornography possession - an indicator of pedophilic interest that correlates with self-reported interest in children and phallometric responses to stimuli depicting children - was significantly and positively related to the offender's history of sexual contacts with children." Pedophilia and Sex Offenses Against Children, Michael C. Seto, J Fam Viol (2009) 24:183-191 at p.337.

In United States v. Garthus, 652 F.3d 715, 720 (7th Cir. 2011), Judge Posner observed:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 *Annals of the N.Y. Academy of Sciences* 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 *Mayo Clinic Proceedings* 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," *Law & Human Behavior,* Nov. 19, 2010 (tab.1), www. springerlink.com/content/ h 4616862621 x 8616/ (visited June 23, 2011).

Id. at 720. These estimates of recidivism are more likely to be low than high. Since recidivism is defined in terms of subsequent arrest, low number of contact offenses based upon arrest is not surprising. These results are explained by multiple factors. First, child molesters do not boast about their crimes to the general public, but, if at all, only between themselves. Second, it is well known and accepted that victims of sex crimes are reluctant to report such crimes. Children are particularly reluctant to talk about sexual abuse. Bonta & Hanson, "Gaging the Risk for Violence: Measurement, Impact and Strategies for Change" (1994) (published by the Solicitor General Canada, Ministry Secretaria (Ottawa)). Baird's reliance on general recidivism statistics or for that matter, any reliance on sex offender recidivism statistics, is misplaced. There is a reason that Congress determined that a minimum term of supervised release of five years for child pornography and other child exploitation offenses is required.

**CONCLUSION**

For the reason stated above, the United States respectfully submits that the Court should deny Barid's motion for early termination of supervised release.

UNITED STATES OF AMERICA,
Plaintiff.

DEBORAH R. GILG
United States Attorney

By:   *s/ Michael P. Norris*
MICHAEL P. NORRIS, #17765
Assistant United States Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-370097

CERTIFICATE OF SERVICE

      I hereby certify that on August 30, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Richard H. McWilliams, Assistant Federal Public Defender.

      *s/ Michael P. Norris*
      MICHAEL P. NORRIS, #17765