IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:07CR204 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S REPLY TO** |
| v. | ) | **GOVERNMENT'S RESPONSE** |
| | ) | **BRIEF [67]** |
| ERIC BAIRD, | ) | |
| | ) | |
| Defendant. | ) | |

The studies and judicial opinions cited by the United States do not provide adequate grounds for continuing Mr. Baird on supervision. These studies regard a complex and hotly-debated area of psychology.

The first article cited by the government was written by Judge Joan Comparet-Cassani, a thrice-admonished member of the Los Angeles County Superior Court.[1] *See* Government Brief at 5. The government cites this article for the propositions that "sex offenders re-offend as late as 24 years after release." Government Brief at 5. This figure, however, is derived from a 1997 study of *child molesters*. *See* 37 San Diego L.

---

[1] Judge Comparet-Cassani was publicly admonished on August 16, 2011. The commission noted that the judge's conduct in revoking a defendant's *pro per* status constituted abuse of authority, disregard for the defendant's Sixth Amendment rights, and intentional disregard for the law. The commission further found that the judge's conduct violated canons that require judges to "respect and comply with the law and act all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," "maintain professional competence in the law," and "be patient, dignified, and courteous to those persons with whom the judge deals in an official capacity."

In reaching its decision, the commission viewed as "aggravating factors" two prior instances abuse of authority. In 2000, the commission noted that the judge was privately admonished for ordering a sheriff's deputy to activate for eight seconds a 50,000-volt electronic stun belt being worn by a *pro per* defendant, not to prevent courtroom violence, but because of the defendant's verbal interruptions. This private admonishment noted two other instances where Judge Comparet-Cassani either shocked or threatened to shock a defendant in order to control non-violent courtroom behavior. In 2006, the judge received an advisory letter for making demeaning remarks to a defense attorney in open court in the presence of the attorney's client.

Rev. at 1072, n. 85 (*citing* Robert A. Prentky et al, *Recidivism Rates Among Child Molesters and Rapists, A Methodological Analysis*. 21 Law & Hum. Behav. 635, 636 (1997)).  The Comparet-Cassani article is not about possessing child pornography.  Instead, the article is about "sexually violent predators," which the article defines as a person "who has been convicted of a sexually violent offense against two or more victims. . . ."  37 San Diego L. Rev. at 1079.  This does not apply to Mr. Baird at all.  Furthermore, the government brief argues that the Comparet-Cassani article demonstrates that "[r]ecividism rates reported in that study were as high as 72 %".  Government Brief at 5.  This statistic again pertains to *child molesters*, not possessors of child pornography – but that fact is omitted from the government's brief.  The actual statistic from the article is, "Even with such shortcomings, some studies, when corrected for any underestimation, have estimated the rate of recidivism at 72 % for *child molesters* and 52 % for rapists."  37 San Diego L. Rev. 1057, 1071 (emphasis added).  Eric Baird is neither a child molester nor rapist.  The government's implication that this statistic (or even any part of the Comparet-Cassani article) somehow encompasses defendants like Eric Baird is patently misleading.

     The government next cites *United States v. Cunningham*, 680 F.Supp.2d 844, 855-56 (N.D. Ohio 2010), a district-court sentencing memorandum, written by U.S. District Judge John R. Adams, who acknowledged that his opinion broke from the "Stabenow argument" that had been accepted by numerous district judges, including a judge within his district.  The statistic cited by the *Cunningham* court (and thus quoted the government's brief) is derived from a 1996 study conducted by R. Karl Hanson and

Monique Bussiere. See 680 F.Supp.2d at 856 *(citing Hanson, R. Karl and Monique Bussiere*, Predictors of Sexual Recidivism: A Meta-Analysis). In 1998, however, Drs. Hanson and Bussiere published a brief article titled: "Sex Offenders: Staying in Treatment is Big Factor in Repeat Offenses" (available at www.selfhelpmagazine.com). The first two lines of this Hanson/Bussiere article are: "Many believe once a sex offender, always a sex offender. Not necessarily." The article goes on to point out that deviant sexual interests, criminal lifestyle, and not completing treatment were the biggest risk factors. As noted in the original motion, Mr. Baird completed a rigorous 18-month treatment program with Lutheran Family Services of Nebraska under the individual treatment of the program's director. Drs. Hanson and Bussiere's 1998 article concludes that, "We now have reliable evidence about those who attend and cooperate with treatment programs are less likely to reoffend than those who reject intervention." *Id.* The *Cunningham* opinion does not cite this "reliable evidence" or Drs. Hanson and Bussiere's conclusion.

The *Cunningham* opinion does, however, cite the "Butner Study," which faced notable and withering criticism from a district court that found that this "study" was non-scientific, not peer-reviewed, and flawed given the absence of a randomly-chosen population and the use of an untested questionnaire. *See United States v. Johnson*, 588 F. Supp. 2d 997, 1005-1007 (S.D. Iowa 2008).[2] Even in the later-peer-reviewed

---

[2] In *Johnson*, Judge Pratt began his critique of the unpublished Butner Study by recognizing the impropriety of substituting a study for individualized consideration:

> The Government offers the Butner Study to demonstrate that Defendant is a threat to the public. However, the Government also offers the Study to show that "defendant is statistically more likely than not to have actually

article from 2009 (the one cited by *Cunningham*, 680 F.Supp.2d at 859-60), the authors acknowledged the study's limitations, even though they stop short of conceding methodological flaws. *See* Michael L. Bourke and Andres Hernandez, *The "Butner Study" Redux: a Report of the Incidents of Hands-On Child Victimization by Child Pornography Offenders*, 24 J. Fam. Violence 183, 189 (Apr. 2009).

The government also cites a 2009 article by Michael C. Seto for the proposition that a child-pornography possession is significantly and positively related to the offender's history of sexual contacts with children. *See* Government's Brief at 6. To be sure, Mr. Baird has never been accused of sexual contact with a child. Moreover, a

---

    committed [a past] act of ["hands-on"] child abuse." Pl.'s Sentencing Mem. at 22. The inference that the Government asks the Court to draw is distasteful and prohibited by law. Uncharged criminal conduct may generally only be considered in sentencing if proved by a preponderance of the evidence. *See United States v. Howe*, 538 F.3d 842, 855 (8th Cir.2008); *see also United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir.2008). Moreover, the Government bears the burden of proof. *United States v. Azure*, 536 F.3d 922, 933 (8th Cir.2008). The Butner Study, even if credible, falls far short of this standard because it fails to demonstrate whether Defendant has, personally, previously assaulted a child sexually. At most, the Study reveals that a majority of other individuals with a similar criminal history committed crimes against children, but the Court cannot see how evidence of those individuals' crimes establishes by a preponderance of the evidence that Defendant committed a prior sexual crime. This conclusion is only bolstered by the fact that the Government failed to present any physical evidence that Defendant sexually assaulted anyone, let alone a child. The Government produced no witnesses, no victims, no forensic evidence, no confession, and no other sign that any previous improper sexual activity occurred. Indeed, the Government agreed with the PSR's calculation of Defendant's criminal history, which does not include any references to prior sexual crimes. Therefore, this Court will not accept the implicit invitation to use the Butner Study to hold Defendant accountable for a phantom crime unsupported by any evidence.

588 F. Supp. 2d at 1005-1006.

study that discusses "an offender's *history* of sexual contacts with children" hardly seems relevant in a determination of whether continued supervised release is appropriate. (Enphasis added). In a 2005 study entitled *The Future Offending of Child Pornography Offenders*, conducted by the same Michael C. Seto (with Angela W. Eke), researchers followed 201 previously-convicted child-pornography offenders. Michael Seto and Angela Eke, "The Future Offending of Child Pornography Offenders," 17 *Sexual Abuse: A Journal of Research and Treatment* 201 (2005) In PEDOPHILIA AND SEXUAL OFFENDING AGAINST CHILDREN, Seto's 2008 book commenting on the 2005 study, he wrote, "If one takes into account both prior and current offenses, child pornography offenders with no other forms of criminal involvement were the least likely to commit future offenses." Michael Seto, PEDOPHILIA AND SEXUAL OFFENDING AGAINST CHILDREN 160 (2008) Seto's 2008 book further explained, "no research has been conducted to determine what effect child pornography use might have on the likelihood of subsequently having sexual contact with a child." *Id.* at 59.

Lastly, the government block quotes a passage by Judge Posner from his opinion in *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011). Dennis Garthus had been convicted of transporting, receiving, and possessing child pornography in federal court ten years *after* he had been convicted in Illinois of making a video of himself cutting the panties off and touching the vagina of a 14-year-old girl he had been molesting since she was 10. 652 F.3d at 717. The *Garthus* block quote quoted by the government cites a number of recidivism statistics. The part of the *Garthus* opinion that immediate follows the block quote – the part not quoted by the government – says:

5

> It's a mistake to lump together different types of sex offender. Lisa L. Sample & Timothy M. Bray, "Are Sex Offenders Different?" An Example of Rearrest Patterns," 17 *Crim. Justice Policy Rev.* 83, 93-97 (2006). This defendant's characteristics suggest that he is more dangerous than the average consumer of child pornography. A pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child pornography offense. Drew A. Kingston et al, "Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders," 34 *Aggressive Behavior* 1, 9 (2008); Michael C. Seto & Angela W. Eke, "The Criminal Histories and Later Offending of Child Pornography Offenders," 17 *Sexual Abuse* 201, 207 (2005) (tab.3). The sadistic nature of much of the child pornography consumed by the defendant is another reason to worry about his being on the loose.

652 F.3d at 720. And, yet, it is the government that concludes that "Baird's reliance on general recidivism statistics or for that matter, any reliance on sex offender recidivism statistics, is misplaced." Government Brief at 7.

WHEREFORE, the Defendant, Eric Baird, for the reasons stated in his original motion, respectfully requests that this Court terminate the remainder of his term of supervision. Hearing is set for this matter on September 6, 2012.

ERIC BAIRD, Defendant,


By:    s/ Richard H. McWilliams
      **RICHARD H. MCWILLIAMS #22455**
      **Assistant Federal Public Defender**
      222 South 15th Street, Ste. 300N
      Omaha, NE 68102
      (402) 221-7896
      e-mail: rich_mcwilliams@fd.org


## CERTIFICATE OF SERVICE

  I hereby certify that on August 31, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Michael P. Norris, Assistant United States Attorney, Omaha, NE.

  I also certify that on August 31, 2012, a true and correct copy of the foregoing was forwarded via e-mail to Erin Finigan, U.S. Probation Officer, Omaha, NE.

            s/ Richard H. McWilliams