IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                          )<br>          Plaintiff,                         )<br>                                                          )<br>v.                                                      )<br>                                                          )<br>ERIC BAIRD,                                 )<br>                                                          )<br>          Defendant.                    ) | CASE NO. 8:07CR204<br><br>**FOURTH MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |

The Defendant ERIC BAIRD, through counsel, respectfully moves this court to terminate his term of supervised release pursuant to 18 U.S.C. §3583(e)(1) and Fed R. Crim. P. 32.1.

   1.  Following a guilty plea to an Information alleging one count of Possession of Child Pornography, this Court sentenced the Defendant to a term of twenty-four (24) months of imprisonment to be followed by five (5) years of supervised release  (Dkt. Entry #30). Eric Baird's term of supervision began on November 25, 2009.

   2.  On June 3, 2011, Eric Baird filed a Motion for Early Termination of Supervised Release.  (Dkt. Entry # 50).  Two and a half years ago, on June 9, 2011, the Court held a hearing in which it denied the motion, advising the Defendant to perhaps re-file the motion once half of the term of supervision had been completed (*i.e.*, late May 2012). *See* Dkt. Entry # 52.

   3.  On December 9, 2011, Eric Baird filed a second Motion for Early Termination of Supervised Release.  (Dkt. Entry # 59).  This Court ordered the United States to file a response but ultimately denied the motion on December 21, 2011.  (Dkt. Entry #62).

4. Consistent with the time frame recommended at the June 9, 2011 hearing, Eric Baird again requested early termination of supervised release on July 16, 2012. (Dkt. Entry #65). A hearing was held on September 6, 2012 and on September 11, 2012, the Court again denied Mr. Baird's motion, citing the insufficiency of scientific evidence to persuade the Court to terminate the supervision early. The Court was, however, "not convinced that there is sufficient scientific evidence to support the government's conclusion that the defendant represents a substantial risk to commit another sex offense." (Dkt. Entry #70).

5. **Eric Baird has now served four of the five years (80%) of his imposed term of supervised release.** He has never faced a petition alleging a violation of those terms. Since he began supervised release in 2009, the Sentencing Commission and countless federal judges have denounced the severity of the child-pornography guidelines. A recent study conducted by the Consortium for Crime and Justice Research concludes that Tier I offenders in Nebraska – like Mr. Baird – have a recidivism rate of less than 1%. Based upon these recent developments and Mr. Baird's history of compliance, termination of his supervised release is warranted.

6. Section 3583(e)(1) of Title 18 permits the termination of supervised release after one year of supervision has passed and upon consideration of several § 3553(a) factors, provided such action is warranted by the conduct of the defendant and it is in the "interest of justice." Eric Baird has now completed four years on supervised release.

7. Both the Sentencing Commission and the judiciary now recognize the enormous expense of supervising individuals who no longer need supervision. On

November 1, 2011, the United States Sentencing Commission amended its Guidelines Manual, adding commentary to §5D1.2 that specifically encourages district courts to consider the early termination of supervised release in "appropriate cases." U.S.S.G. § 5D1.2, Application Note 5. An example within Application Note 5 suggests that supervision could be terminated early in the case of a drug addict who successfully completes substance abuse treatment and thereby reduces his risk to the community. Over two years ago, Mr. Baird completed a rigorous 18-month treatment program with Lutheran Family Services of Nebraska under the individual treatment of the program's director, Roxanne Koenig. This program involved individual treatment, group therapy, and polygraphy. Naturally, there have been no issues since he completed this treatment. If the Sentencing Commission has suggested that drug addicts who complete a program should be afforded the opportunity to have their supervision terminated early, certainly Mr. Baird should receive this benefit as well. Mr. Baird, unlike many of the drug addicts to which the Sentencing Commission is willing to give a break, has no other criminal history and a strong and supportive family.

8. A few months after the Sentencing Commission amended its Guidelines, on February 16, 2012, the Committee on Criminal Law of the Judicial Conference of the United States (Chairman, the Honorable Robert Holmes Bell) submitted a memorandum to the federal judiciary entitled, "COST CONTAINMENT STRATEGIES RELATED TO PROBATION AND PRETRIAL SERVICES OFFICERS **(IMPORTANT INFORMATION)**" (hereinafter "COST CONTAINMENT STRATEGIES"). The memo indicated that, in FY2010, supervision cost $3938 per case and concluded that, "Terminating appropriate cases before they reach

3

their full term saved resources and allowed officers to focus on offenders who continue to pose the greatest risk of recidivism." "COST CONTAINMENT STRATEGIES" at 2.  The committee identified nine general criteria to be used in assessing whether early termination is appropriate, including: 1) stable community integration; 2) progressive strides toward supervision objectives and compliance with all conditions; 3) no aggravated role in the offense of conviction; 4) no history of violence; 5) no recent arrests/convictions or ongoing, uninterrupted patterns of criminal conduct; 6) no recent evidence of alcohol or drug abuse; 7) no recent psychiatric episodes; 8) no identifiable risk to the safety of any identifiable victim; and 9) no identifiable risk to public safety reflected in the risk assessment. *Id.*  The memo notes that AO staff studied the recidivism rates of offenders whose supervision had been terminated early against the rates of offenders who completed their full terms. *Id.*  This study revealed that early-termination cases were arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often. *Id.*  "From a policy standpoint," concluded the committee, "it appears that the above criteria, when properly applied, does not jeopardize public safety." *Id.*

      9. Eric Baird meets all nine criteria.  Prior to this offense, Baird had no criminal record.  A college-educated former Air Force Captain, he naturally has not ever used illicit drugs.  He is not prohibited from using alcohol, or subject to a probationary Urinalysis Phase requirement.  The Lutheran Family Services program in which Mr. Baird participated, using various risk-assessment tools, has had no objection to allowing

Eric Baird to live with his family which include three children.  His family structure is stable and supportive.  He has paid the special assessment in full.

      10.  Furthermore, Mr. Baird has secured (and previously provided to the Court) letters of support for early termination of supervised release from the Chief of Police for the City of Papillion, the Executive Director of Nebraskans Unafraid, and the President and Executive Director of Families Affirming Community Safety, Inc. (FACTS).  Chief Leonard Houloose of the Papillion Police Department writes that, "I believe that Mr. Baird poses no danger to our community, which is nationally recognized for its prosperity and public safety.  I am charged with maintaining the safety of our citizens, and I believe their safety will not be compromised by Mr. Baird's supervisory discharge."  Eric Baird also lives next door to the Sarpy County Sheriff, Jeff Davis.

      11.  In this case, the likelihood of recidivism is low.  In addition to the statistics cited by the Committee on Criminal Law that early-termination supervisees recidivate at a lower rate than their full-term counterparts, additional data accumulated from other federal criminal cases indicates that Mr. Baird poses a very low risk of recidivism. Publications available on the Sentencing Commission's website reveal that, even beyond criminal-history category, criminal-history points are an excellent indicator of the risk of recidivism. Studies conducted in 2004 by the Sentencing Commission conclude, specifically, "[a]ll offenders with zero criminal history points have a primary recidivism rate of 11.7 percent. The zero-point offender rate is substantially lower than the recidivism rates for offenders with only one criminal history point (22.6%), or for offenders with two or more points (36.5%) combined in Criminal History Category II

through Criminal History Category VI."[1]  Mr. Baird's zero criminal history points total places him in the category of offenders who have the lowest risk of recidivism.  As explained above, a July 31, 2013 report titled "Nebraska Sex Offender Registry Study" (hereinafter "NSORS") by the University of Nebraska-Omaha's Consortium for Crime and Justice Research found that the Adam Walsh Act Tier System (42 U.S.C. § 16911(3)) "was very effective in distinguishing those at a high risk to reoffend from medium and low risk offenders."  NSORS at 49.  The report concluded that offenders like Eric Baird who are classified within Tier I under 42 U.S.C. § 16911 (the lowest level) recidivate at a rate of less than 1%.  NSORS at 28 (Table 11).

12.  Finally, the continued supervision of individuals, like Mr. Baird, who no longer require supervision is a drain upon limited judicial and fiscal resources.  As noted by the Committee on Criminal Law, the annual cost of supervising a defendant is currently $3938.35.[2]  This reflects a 14% increase from the cost of supervision just five years earlier in FY 2005 (Annually: $3450).[3]  Even assuming no increase in costs, supervising Mr. Baird until November 2014 (another 12 months) would cost approximately $4000.

---

[1] - *Recidivism and the "First Offender,"* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) at 13-14 (available at HTTP://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf)

[2] - "Newly Available: Costs of Incarceration and Supervision in FY 2010," June23, 2011 (http://www.uscourts.gov/news/newsView/11-06-23/Newly_Available_Costs_of_Incarceration_and_Supervision_in_FY_2010.aspx).

[3] - *See* Deputy Assistant Director Matthew G. Roland's *Memorandum to All Chief Probation Officers, Chief PreTrial Services Officers; Subject: Cost of Incarceration and Supervision (IMPORTANT INFORMATION)*, dated May 24, 2006, (http://www.fd.org/pdf_lib/Costs%20of%20Incarceration%20and%20Supervision%202005.pdf).

13. WHEREFORE, the Defendant, Eric Baird, respectfully requests that this Court terminate the remainder of his term of supervision. The Defendant also requests a hearing, should the Court decide that it would like further evidence adduced. The Defendant has previously sent the letters from the individuals mentioned in this motion under separate cover and can resend them if necessary.

ERIC BAIRD, Defendant,

By:   s/ Richard H. McWilliams
**RICHARD H. MCWILLIAMS #22455**
**Assistant Federal Public Defender**
222 South 15th Street, Ste. 300N
Omaha, NE 68102
(402) 221-7896
e-mail: rich_mcwilliams@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Michael P. Norris, Assistant United States Attorney, Omaha, NE.

I also certify that on November 25, 2013, a true and correct copy of the foregoing was forwarded via e-mail to Erin Finigan, U.S. Probation Officer, Omaha, NE.

s/ Richard H. McWilliams